UNITED STATES DISTRICT COURT FILED MAR 18 2016 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-vs-

ALEX TORRES,

Defendant

DECISION AND ORDER

08-CR-6210 CJS
13-CV-6118 CJS

APPEARANCES

For Defendant: Alex Torres, *Pro se*
29769-050
Loretto Federal Correctional Institution
P.O. Box 1000
Loretto, Pennsylvania 15940

For the United States: Jennifer M. Noto
Assistant United States Attorney
100 State Street, Room 620
Rochester, New York 14614

INTRODUCTION

Now before the Court is Alex Torres's ("Defendant" or "Torres") *pro se* application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Docket No. [#1048]). The application is untimely and procedurally barred, and is therefore denied.

BACKGROUND

Torres was a member of a conspiracy to possess and distribute large quantities of cocaine and heroin in Rochester, New York. Torres was convicted by way of plea, pursuant to an Fed. R. Crim. P. 11(c)(1)(B) plea agreement (Docket No. [#734]) in which he expressly agreed that his sentencing range under the advisory Sentencing Guidelines was 270 months to 322 months. As part of the Plea Agreement, Torres waived the right to appeal

or collaterally attack any sentence that fell within that range. The Court imposed an aggregate sentence within that range, of 312 months.[1] Nevertheless, on February 26, 2013, Torres filed the subject collateral attack *pro se*. Torres does not ask to withdraw his plea, but merely seeks a sentence shorter than the one contained in the Plea Agreement.[2]

The underlying facts were accurately set forth in the Government's memorandum of law, as follows:

> On December 16, 2009, a 19-count Second Superseding Indictment was filed which charged the defendant, Alex Torres (hereinafter "Torres"), in Count 1 with a violation of 21 U.S.C. § 846[3], in Counts 2 and 18 with violations of 18 U.S.C. § 924(c)(1)[4], in Count 17 with a violation of 18 U.S.C. § 1951(a)[5], and in Count 19 with a violation of 18 U.S.C. § 1956(h)[6]. On August 5, 2011, Torres entered a plea of guilty to Counts 1, 2, 17 and 19.
>
> The plea agreement was executed in open court following an extensive plea colloquy. During the course of the plea colloquy, the Court carefully reviewed the salient terms of the agreement. The Court confirmed that Torres was informed of the charges and the consequences of pleading guilty, agreed to the facts that supported the charges, and that he had not been coerced in any way into entering the pleas of guilty. It was confirmed as well that Torres

[1]On September 21, 2015, the Court granted Torres' application pursuant to 18 U.S.C. § 3582(c)(2), and reduced the sentence to 260 months. *See*, Docket No. [#1235].

[2]Torres requests that the Court "set aside his sentence and remand [sic] for re[-]sentencing consistent with appropriate sentencing guidelines range." § 2255 Application [#1048] at p. 5.

[3]Conspiracy to possess with intent to distribute, and to distribute, five kilograms or more cocaine and one kilogram or more of heroin. According to the findings in the Pre-Sentence Investigation Report ("PSR"), which Torres adopted, the conspirators were receiving kilo quantities of cocaine from Puerto Rico and distributing it in Rochester. "Over a 1000 kilograms were sent during the course of the 2 year period, and more than 13 kilograms were seized during the course of the investigation." PSR at p. 13, ¶ 34.

[4]Possessing a firearm in furtherance of a drug trafficking crime. "Numerous firearms, including handguns, AK47 and AR-15 assault style rifles were seized during the course of the investigation." PSR at p. 13, ¶ 34.

[5]Conspiracy to obstruct commerce by robbery and extortion.

[6]Conspiracy to commit money laundering.

> could understand the Court with the assistance of an interpreter, and that the plea agreement had been translated for Torres from English to Spanish. Significantly, the Court confirmed that Torres was satisfied with the representation provided by defense counsel[, Paul G. Dell ("Dell").] After witnessing Torres sign the plea agreement, this Court made a specific finding that the pleas were being entered knowingly, intelligently and voluntarily.
>
> At the sentencing hearing on December 21, 2011, this Court sentenced Torres principally to an aggregate term of imprisonment of 312 months. [On January 11, 2012, the Court entered the judgment.] Torres did not file a direct appeal[, and consequently his conviction became final on January 25, 2012. *See*, Fed. R. App. P. 4(b)(1)(A)] .
>
> [More than one year later, o]n February 26, 2013, Torres filed the instant motion pursuant to 28 U.S.C. § 2255 arguing that defense counsel [(Dell)] provided ineffective assistance [in two respects: First, he "misadvised" Torres that he was not entitled to a *Fatico* hearing concerning a two-level enhancement for injury to a victim pursuant to § 2B3.2(b)(4)(A) of the advisory U.S. Sentencing Guidelines ("USSG"); and second, he failed to file a direct appeal after Torres directed him to do so].

Respondent's Memo of Law [#1065] at pp. 1-2 (citations omitted).

As mentioned above, the § 2255 application was filed one year and twenty-six days[7] after Torres's conviction became final. Torres acknowledges that the application was filed beyond the one-year statute of limitations, *see*, 28 U.S.C. § 2255(f), but maintains that the Court should equitably toll the filing deadline, for either of two reasons. First, Torres contends that he was confused as to whether a "paralegal firm located in Georgia" was already pursuing a § 2255 application on his behalf. More specifically, Torres indicates that "in or about late November 2012," he "was advised by a paralegal firm that a § 2255 motion

[7] In calculating the filing date, the Court applies the prison mailbox rule. Therefore, while as mentioned above the § 2255 application was actually filed with the Court on February 26, 2013, the Court will consider the filing date to be the date of the cover letter, which is February 19, 2013.

had been timely filed on his behalf and [that the paralegal firm was seeking] to recover a $1500.00 fee from [him] for the filing of his § 2255 motion." Torres does not claim that he ever asked the unnamed paralegal firm to file a § 2255 application on his behalf, or that he ever paid the firm any money. Instead, Torres claims that the paralegal firm sent an apparently-unsolicited letter to his mother, who made "several unsuccessful attempts" to contact the "paralegal firm," and then threw away the letter.[8]

Alternatively, and somewhat inconsistently, Torres maintains that he filed the § 2255 application late because he believed that Dell was pursuing a direct appeal. "Specifically, [Torres] avers that he requested that [Dell] appeal a two-point enhancement regarding the issue of physical harm [to a victim of the conspiracy], and that [Dell also] appeal the denial of an additional [one-point enhancement] for acceptance of responsibility."[9]

With regard to such "two point enhancement for bodily injury," Torres is referring to the fact that when the Court calculated his guideline sentence for Count 17 of the indictment (18 U.S.C. § 1951(a), Hobbs Act conspiracy to obstruct commerce by robbery and extortion), using the advisory sentencing guidelines, it applied a two-level enhancement pursuant to USSG § 2B3.2(b)(4)(A), because a kidnaping victim sustained bodily injury. More specifically, the Government's proof indicated that the conspirators kidnaped the father of a man whom they believed had stolen four kilos of cocaine from them, in an attempt to either obtain ransom from the thief or otherwise receive payment for the cocaine. The conspirators kidnaped the victim and held him, and assaulted him, at two different apartments in Rochester. According to the PSR, the findings of which Torres has

---

[8]Section 2255 Application [#1048] at p.8 (Torres Affirmation at p. 3, n. 1).

[9]§ 2255 Application [#1048] at p. 4.

adopted,[10] Torres was present at both locations where the victim was held: "Alex [Torres] was at the apartment in the City where they initially assaulted and kidnaped Rivera and then was present for part of the time at Torres-Perez's apartment."[11] Eventually, the kidnaped man escaped from the conspirators by leaping through a window. According to the PSR, when police arrived, they observed that the kidnaping victim had "several cuts on his head and face and blood all over his body."[12] Torres adopted the PSR's findings,[13] but claims that he was less culpable than his co-conspirators, since he was not present at the second apartment the entire time. *See, e.g.*, Sentencing Transcript [#1063] at pp. 3-4 ("I must say that I'm sorry that it happened to the victim of the kidnaping. . . . I left the place before something worse happened."). Although Torres specifically agreed to this two-level enhancement in the Plea Agreement, he now maintains that the Court erred by applying such enhancement, and that he instructed Dell to appeal that issue.

Torres also contends that he instructed Dell to file an appeal because he believes that the Court erred, in calculating his advisory sentencing-guideline-range, by awarding him a two-point reduction for acceptance of responsibility, instead of three.[14] Again, Torres contends that the Court erred in this regard, even though he specifically agreed in the Plea Agreement that he would receive only a two-point reduction for acceptance of responsibility. Torres does not explain why he believes the Court erred in doing so.

---

[10] *See*, Docket No. [#839], Defendant's Statement With Respect to Sentencing Factors.

[11] PSR [#842] at p. 14, ¶ 36.

[12] PSR [#842] at p. 14, ¶ 37.

[13] *See*, Docket No. [#839], Defendant's Statement With Respect to Sentencing Factors.

[14] § 2255 Application [#1048] at p. 8, ¶ 10.

In any event, Torres maintains that he delayed filing a § 2255 application partly because he thought Dell had filed an appeal. On this point, Torres states:

> Immediately after sentencing, I specifically instructed Mr. Dell to file a notice of appeal on my behalf, as I wished to challenge the two-point enhancement for bodily injury and the denial of an additional one-point reduction for timely[15] acceptance of responsibility. Mr. Dell advised that notwithstanding waivers contained within my plea agreement, he would file a notice of appeal. I believed Mr. Dell when he told me he would file a notice of appeal, and I believed my appeal was pending.

(Docket No. [#1048] at p. 8, ¶¶ 10-12).

To summarize, Torres suggests that as of January 2013, he believed that Dell had filed a direct appeal, and that he was simultaneously unsure whether the Georgia "paralegal firm" had filed a § 2255 motion. Subsequently, on January 21, 2013, Torres contacted the Office of the Clerk of the Court, and requested a copy of the docket sheet for this action. According to Torres, he received the docket sheet "on or about February 7, 2013," at which time he learned, for the first time, that Dell had not filed an appeal, and that the "paralegal firm" had not filed a § 2255 application. As a consequence, Torres contends that the Court should excuse the untimely filing of the § 2255 application:

> Because movant was under the belief that trial counsel had filed a timely notice of appeal on his behalf, he was unaware that the 28 U.S.C. § 2255 filing deadline had lapsed, thus, in the interest of justice, this Court should invoke its discretionary power for the purpose of equitable tolling.

§ 2255 Motion, Docket No. [#1048] at p. 3, n. 2.

Because Torres alleged that Dell ignored his instruction to file a notice of appeal, the

---

[15]Torres pled guilty some twenty months after being indicted. At sentencing, Dell indicated that Torres would have pled guilty sooner, but he was awaiting the resolution of a separate murder charge in New York State court.

Court found that Torres had waived the attorney-client privilege as to that issue, and directed Dell to submit "an affidavit as to all the relevant circumstances, discussions and advice regarding any request by the defendant to file a Notice of Appeal." (*See*, Order [#1054]). On April 30, 2013, Dell filed an affidavit, indicating in pertinent part that Torres never asked him to file a notice of appeal. (Docket No. [#1061] at ¶ 8). On this point, Dell states:

> After significant attorney-client discussions, plea negotiations and trial preparation, Mr. Torres pleaded guilty pursuant to a written plea agreement on August 5, 2011. Immediately after the guilty plea, Mr. Torres was very emotional and thanked me for my efforts. He understood that the suggested Guideline Range was 270-322 months. We talked about the Pre-Sentence Investigation and making sure I contact his wife so that she could submit a letter. He wanted to do everything possible to encourage the Court to sentence him to the low end.
>
> ***
>
> On the day of sentencing, December 21, 2011, I met with Mr. Torres and reviewed the PSR with him along with my submissions to the Court. At no point did Mr. Torres express any regret that he pleaded guilty nor any desire to withdraw his guilty plea. He merely hoped that he [would] receive the low end of the Guideline Range.
>
> Mr. Torres was sentenced to 312 months. He was very upset. I discussed his options with him. Mr. Torres agreed that the 312 months was within the range contemplated in the Plea Agreement and that he therefore waived his right to appeal the sentence. We again discussed my opinion that the Government's proof was overwhelming and that he was facing more than 50 years if convicted [after trial]. He agreed that pleading guilty was still the right decision, though he was not happy with the outcome. I next heard from Mr. Torres [on or about] February 29, 2012[, when I received a letter from him requesting a copy of his criminal files.] Mr. Torres never requested that I file a notice of appeal.

Docket No. [#1061] at ¶ ¶ 6-8.

As mentioned in Dell's affidavit, on or about February 29, 2012, which was approximately two months after Torres was sentenced, Dell received a letter from Torres stating:

> Dear Counsel:
>
> I am writing you this letter in reference to my criminal file. As you may be aware of [sic] I was sentence[d] on December 21, 2011, to 26 years term of imprisonment. It is my understanding that there was no appeal file[d] in my case after sentencing, but that I have the right to file a habeas corpus petition pursuant to 28 U.S.C. § 2255. I only have a year to file my 2255 motion, and in order for me to file the petition, I will need for you to send me [sic] to the above address my entire Federal and State criminal records.
>
> I hope that you can send me these files as soon as possible, so that I can begin working in analyzing any constitutional violation that as [sic] occurred to me during the prosecution of my case, or any failure of the defense to protect my constitutional rights.
>
> Therefore, I will be waiting to hear from you in reference to my criminal files.

(Docket No. [#1061] at p. 3). Dell's affidavit [#1061] does not indicate whether he ever sent Torres the requested files. Presumably, that is because the Court's Order [#1054] directing Dell to submit the affidavit merely directed him to indicate whether Torres ever asked him to file an appeal. The Court drafted its Order in that manner based on Torres's allegations in the § 2255 application, which never mentioned that he had requested his file from Dell.

After Dell filed his affidavit, the Government filed its response [#1065] to the § 2255 application. The Government maintains that the § 2255 application should be dismissed as untimely, since Torres has not shown that equitable tolling is appropriate. Essentially, the Government contends that it was not reasonable for Torres to think either that Dell had filed an appeal, or that the paralegal firm was filing a § 2255 motion for him. The

Government further indicates that there was nothing preventing Torres from contacting the Court sooner to check on the status of his case. The Government also contends that Torres's § 2255 claims are procedurally barred by the Plea Agreement's waiver provision. Lastly, the Government argues that Torres's claims of ineffective assistance of counsel lack merit in any event.

In Torres's traverse/reply [#1071], he contends that his claims are not procedurally barred by the Plea Agreement's waiver, since Dell was ineffective in failing to file an appeal after Torres instructed him to do so. Torres asserts that his letter to Dell, in February 2012, supports his claim that he instructed Dell to file an appeal. Torres also now claims that Dell never provided him with his criminal file, and that such failure also contributed to the untimely filing of the § 2255 motion. *See*, Docket No. [#1071] at pp. 3-4. Torres maintains that his delay in filing the § 2255 motion was inconsequential in any event, and should be excused. Torres's reply/traverse does not respond to the Government's arguments concerning the merits of his ineffective assistance claim.

DISCUSSION

Petitioner's *Pro Se* Status

Since Torres is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Section 2255 Principles

Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or

> that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b). Here, the Court finds that a full evidentiary hearing is not required because the record, as supplemented by Dell's affidavit, conclusively shows that Torres is not entitled to relief.

<u>The Application is Untimely and Equitable Tolling Does Not Apply</u>

A district court may not extend the one-year filing deadline in 28 U.S.C. § 2255(f), except in situations where equitable tolling applies. As to that,

> [e]quitable tolling applies only in the rare and exceptional circumstance. In order to equitably toll the one-year period of limitations, [the Defendant] must show that extraordinary circumstances prevented him from filing his petition on time. In addition, the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll.

*Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000) (citations and internal quotation marks omitted); *see also, Rivera v. United States*, 448 Fed.Appx. 145, 146 (2d Cir. Nov. 30, 2011) ("We set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling.") (citations and internal quotation marks omitted).

> [Further, t]o be eligible for equitable tolling, a petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

*Rivera v. United States*, 448 Fed.Appx. at 146 (citation and internal quotation marks

omitted).

In the instant case, Torres offers two reasons why equitable tolling should apply, but neither of them are credible or sufficient to establish the required "extraordinary circumstances." At the outset, Torres's alleged confusion as to whether the unnamed paralegal firm had filed a § 2255 application on his behalf is simply incredible. Torres claims that his mother received a letter from the firm, but threw it away after unsuccessful attempts to contact the firm. Consequently, Torres actually has no firsthand information about the letter, and its unlikely that his mother could provide any insights at this point, since she supposedly threw the letter away years ago.[16] But even assuming that Torres's mother received such a letter, Torres knew that he had not retained anyone to file a § 2255 motion on his behalf, and it would have been unreasonable for him to believe that such an application had been filed by a paralegal firm with whom he had never had any contact. Beyond that, there was nothing preventing Torres from contacting the Court sooner to confirm that no such motion was filed.

Torres's alternative contention, that he believed Dell had filed an appeal, is similarly incredible. In that regard, the Court not only has Dell's affidavit denying that Torres ever directed him to file an appeal, which the Court credits, but it also has Torres's own letter to Dell, written two months after sentencing, in which he acknowledges that no appeal was filed. To be clear, Torres's letter to Dell indicates both his understanding that no appeal was filed, and his intention to file a § 2255 application *pro se*. Torres's letter to Dell also establishes that he was aware of the one-year statute of limitations. Furthermore, Torres

---

[16] Torres previously informed the Court that his mother resides in Puerto Rico, and he provides no explanation for how a Georgia paralegal firm became aware of his case, or how it managed to connect his case to his mother, who lives in Puerto Rico. PSR at ¶ 92.

offers no reason why he would have believed that Dell had filed an appeal, when during the year following the sentencing he never received any appeal-related documentation from Dell, this Court, or the Second Circuit.

Finally, Torres's belated attempt to blame his untimeliness on Dell's alleged failure to provide him with his criminal file is also not credible. The Court finds it significant that Torres never mentioned in the § 2255 application that he had written to Dell in February, 2012, requesting his file. After all, when Torres filed the § 2255 application, he was aware that it was untimely, and that he needed to demonstrate his entitlement to equitable tolling. Accordingly, if Dell had in fact failed to send Torres his criminal file, as Torres now claims, and if such fact had actually hindered Torres's ability to file the § 2255 motion, the Court believes that Torres surely would have included such information in the § 2255 application. Rather, the Court finds it more likely that Torres did not previously mention his February 2012 letter to Dell because, as already discussed, the letter proves he knew that Dell had not filed an appeal. Finally, even assuming *arguendo* that Dell failed to respond to Torres's request for his criminal file, such failure was many months prior to the filing deadline, and Torres has not explained why he could not have filed the § 2255 application sooner without Dell's file.

In sum, Torres has not shown extraordinary circumstances or due diligence, and his request for equitable tolling is denied. Torres's § 2255 application is therefore also denied, as untimely.

<u>The § 2255 Application is Barred by the Plea Agreement's Waiver Provision</u>

Alternatively, the § 2255 application is barred by the Plea Agreement's collateral attack waiver provision. As mentioned earlier, as part of the Plea Agreement Torres waived

the right to appeal or collaterally attack any sentence of 322 months or less, and the Court imposed a sentence below that. Consequently, Torres is barred from collaterally attacking his sentence, unless he can show that the waiver is unenforceable.

The law concerning the enforceability of such waivers is well settled. First and foremost, "[w]aivers of the right to appeal [or collaterally attack] a sentence are presumptively enforceable," and such a waiver "will be treated as valid so long as it is knowingly, voluntarily, and competently provided by the defendant." *U.S. v. Conrad*, No. 13-0842-cr, 605 Fed. Appx. 55, 56 (2d Cir. Jul. 1, 2015) (citation and internal quotation marks omitted). One exception to an otherwise valid waiver is where the defendant can show that, subsequent to executing the waiver provision, he asked his attorney to file a notice of appeal, and the attorney failed to do so:

> In *Campusano [v. U.S.*, 442 F.3d 770 (2d Cir. 2006)], the Second Circuit applied the *Flores–Ortega* presumption of prejudice to circumstances in which the defendant had waived the right to appeal in a plea agreement but thereafter requested counsel to file a notice of appeal. [*Id.* at 775.] The only exception to this presumption of prejudice is when counsel files an *Anders* brief delineating "(1) whether the plea and waiver were knowing, voluntary, and competent; (2) whether it would be against the defendant's interest to contest his or her plea; and (3) any issues implicating rights that cannot be, or arguably were not, waived." *Id.* at 774, *citing United States v. Gomez–Perez*, 215 F.3d 315, 319 (2d Cir.2000). If counsel has not filed an *Anders* brief, and the defendant has claimed that he or she asked counsel to file a notice of appeal, the presiding district court must conduct an evidentiary hearing[17] to determine whether the defendant requested that counsel file a notice of appeal. *Campusano*, 442 F.3d at 776. If the court finds that an appeal was requested and that the request was ignored, then counsel has acted unreasonably and prejudice is presumed. The defendant is then permitted to file a direct appeal. *Id.* This decision is to be made without

[17]"That hearing need not be testimonial." *Daragjati v. United States*, 598 Fed.Appx. 50, 52 (2d Cir. 2015) (citation omitted).

> consideration of the merits of the claimed appellate issues, which would be considered on the resurrected appeal. *Id.*

*Ramos v. United States*, No. 06 CIV. 5815 TPG LMS, 2011 WL 7112622, at *5 (S.D.N.Y. Nov. 16, 2011) *report and recommendation adopted*, No. 06 CIV. 5815 TPG, 2012 WL 273470 (S.D.N.Y. Jan. 27, 2012).

In the instant case, the Court has already found that Torres never asked Dell to file an appeal, and consequently he cannot avoid the appeal/collateral attack waiver on that basis.

Nor has Torres attempted to show that his plea was anything other than knowing and voluntary.[18] Torres is not interested in making such an argument anyway, since he does not wish to withdraw his plea, but merely wants a reduced sentence. However, such a challenge to a sentence, "dressed up" as a claim of ineffective assistance of counsel at sentencing, is insufficient to overcome a waiver:

> [H]aving waived his right to appeal any sentence within or below [a particular] Guidelines range, [the defendant] may not now do an end-run around his plea agreements on the ground of ineffective assistance. Waivers of the right to appeal a sentence are presumptively enforceable. So long as they are knowing and voluntary, such waivers must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants. A defendant may not "dress up" a challenge to the correctness of his sentence as a Sixth Amendment claim for ineffective assistance of counsel by arguing the deficiency of his counsel's performance "not at the time of the plea, but at sentencing." *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir.1998) (per curiam). Here, [the defendant's] sentence fell within or below the Guidelines

[18] Torres specifically indicated that he did not need to make such a showing. *See*, Traverse/Reply [#1071] at p. 7. ("To the extent that the government argues whether the plea was knowing and voluntary [that] is an argument for a different forum. The question before this Court is whether trial counsel was instructed to timely appeal and whether counsel complied with his obligation.").

> ranges specified in the plea agreements, and therefore triggered the appellate waiver provisions of those agreements. His arguments as to the adequacy of his attorney's performance at sentencing are consequently foreclosed.

*United States v. Williams*, 448 Fed. Appx. 156, 157 (2d Cir. Jan. 18, 2012) (some citations and internal quotation marks omitted).

This holding is applicable here, since Torres does not allege that Dell was ineffective in connection with the plea. Instead, Torres alleges that Dell was ineffective at sentencing[19] when, after receiving the PSR, he failed to request a *Fatico* hearing.[20] However, the PSR was consistent with the Plea Agreement, and the Court imposed a sentence within the agreed-upon range, thereby triggering the appeal/collateral attack waiver. Accordingly, this application is procedurally barred.

CONCLUSION

Torres's application under 28 U.S.C. § 2555 [#1048] is denied. The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Torres has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the

---

[19]Torres indicates that after the plea but prior to sentencing, he asked Dell to "request a *Fatico* hearing so that [h]e could present evidence that he had not participated in the assault," but that Dell "advised [him] that [he] was not entitled to a *Fatico* hearing[, though Dell indicated that he] would argue against the enhancement at sentencing." *See*, § 2255 Application [#1048] at p. 7, ¶¶ 7-8. Although it is irrelevant to the outcome, the Court does not credit this claim for at least two reasons: First, Dell did not mention such a discussion in his affidavit; and second, Dell would have breached the Plea Agreement by contesting that enhancement at sentencing.

[20]Torres indicates that it was when Probation prepared the PSR that he first became aware that in calculating his advisory sentencing guideline range the Court would apply a two-level increase pursuant to USSG § 2B3.2(b)(4)(A) (bodily injury to a victim). *See*, § 2255 Application [#1048] at p. 7, ¶¶ 5-6. That assertion is patently untrue, however, since the PSR was prepared months after the plea, and the enhancement under USSG § 2B3.2(b)(4)(A) was set forth in the Plea Agreement. Additionally, the Court discussed the enhancement with Torres during the plea colloquy.

Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
March 17, 2016

ENTER:

Charles J Siragusa
CHARLES J. SIRAGUSA
United States District Judge